UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ARRELLO BARNES,

                                    Plaintiff,

                                                                     DECISION AND ORDER

                                                                     07-CV-6197L

                v.

FEDELE, et al.,

                                  Defendants.
_____

Plaintiff, Arrello Barnes, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), has sued a number of defendants, all of whom at all relevant times were officials or employees of DOCS, alleging that plaintiff's constitutional rights were violated in several respects in 2007, while plaintiff was confined at Southport Correctional Facility.

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which the Court has converted to a motion for summary judgment under Rule 56. *See* Dkt. #66. Some defendants have moved to dismiss all the claims against them; others have moved to dismiss only some of plaintiff's claims. The specifics of defendants' motions are set forth in the discussion of their motions, *infra*.

**PLAINTIFF'S CLAIMS**

Plaintiff states in the complaint that, with respect to his religious beliefs, he considers himself a "Hebrew Isrealite" [sic]. *See* Dkt. #1 at 30. He also states that because "Hebrew Isrealite" is not a religion that is recognized by DOCS, plaintiff "converted to Jewish on paper" to make it easier for plaintiff to obtain Kosher meals and to follow certain other religious practices, in accordance with his religious beliefs, without interference from DOCS officials and employees. *See* Dkt. #1 at 52.

In his first claim, plaintiff alleges that on January 21, 2007, defendant Correction Officer ("C.O.") Fedele confiscated plaintiff's "religion crown for [plaintiff's] dreadlock," which plaintiff describes as "religion head wear" that plaintiff wears in accordance with his faith. Dkt. #1 at 11. Plaintiff states that the constitutional bases for this claim are "religion, due process, and equal protection." *Id.*

Plaintiff's second claim alleges that on January 23, 2007, defendants Sgt. Furman and C.O. Murphy "forge[d] a false cell search" indicating that plaintiff's headwear had been confiscated during a search of plaintiff's cell. Dkt. #1 at 12. Plaintiff alleges that defendants did this "to protect C.O. Fedele cause he confiscated Barnes religion headwear and did not give a contraband receipt." *Id.* The stated bases for this claim are "failure to protect, due process and religion, [and] equal to [sic] protection." *Id.*

Plaintiff's third claim, based on "failure to protect, religion and due process," alleges that on January 23, 2007, defendant Lt. Kerbein interviewed plaintiff concerning the confiscation of plaintiff's headwear, and that Kerbein "covered up for C.O. Fedele." *Id.* at 13. His fourth claim,

based on "equal protection, failure to protect, [and] religion," is asserted against defendant Chaplain Theresa Stanley, and alleges that she violated a DOCS directive ("Directive 4202") providing that a chaplain of the inmate's particular faith should ordinarily make the determination whether the inmate's religious head covering is permitted under Directive 4202. *Id.* at 14.

Plaintiff's fifth claim is brought against DOCS Commissioner Brian Fischer and Deputy Commissioner for Program Services John Nuttall.[1] Plaintiff alleges that he wrote to Fischer to complain about the confiscation of his crown, and that Nuttall, acting on Fischer's behalf, responded in letters that "support[ed] the violations" of plaintiff's rights. Dkt. #1 at 16. "Failure to protect" and "religion" are the stated bases for this claim. *Id.*

Plaintiff's sixth claim, also based on "failure to protect" and "religion," is asserted against Rabbi Howard Matasar. Plaintiff alleges that he complained about these matters to Matasar, and that Matasar "did nothing to protect Barnes religious rights." *Id.* at 17. His seventh claim, against Deputy Superintendent Paul Chappius, alleges that Chappius sent plaintiff a memo stating that Southport staff "did follow proper procedure in taking" plaintiff's headwear. *Id.*; *see also id.* at 40. The seventh claim is based on "failure to protect, religion, [and] due process." *Id.* at 17.

Plaintiff's eighth claim is brought against Deputy Superintendent Angela Bartlett, Acting Deputy Superintendent P. Corcoran, and former Superintendent Michael McGinnis. Plaintiff alleges that these defendants denied his request for Kosher meals, and that they "supported C.O. Fedele, by

---

[1] Nuttall's name is misspelled as "Nuttail" in the complaint.

This claim is denominated in the complaint as plaintiff's sixth claim. Plaintiff's original fifth claim was dismissed by order of this Court on September 26, 2008. 2008 WL 4389881. Numerical references to plaintiff's claims, then, are to the remaining claims.

creating their own policy ... ." *Id.* Plaintiff's ninth claim is asserted against Southport Superintendent David Napoli, and alleges that he knew of the alleged violations of plaintiff's rights, but failed to correct them. Plaintiff's tenth claim is brought against Inmate Grievance Program Director Thomas Eagen, and alleges that Eagen "did not ruled [sic] on plaintiff [sic] grievance" concerning these matters, and that "[t]he time limitation has expired." *Id.* at 18. All three of these claims assert the same constitutional bases, "equal protection, religion, due process, and failure to protect." *Id.*

Although the complaint generally refers simply to "religion" as the basis for some of these claims, I construe these claims as brought under § 1983, based on the Free Exercise Clause of the First Amendment, as well as under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc. While some defendants have moved to dismiss those claims for lack of personal involvement, none of the defendants have moved to dismiss those "religion" claims on the merits.

## DISCUSSION

**I. Motion to Dismiss by Bartlett, Chappius, Eagen, Fedele, Fischer, Kerbein, McGinnis, Napoli, Nuttall, and Stanley**

Defendants Bartlett, Chappius, Eagen, Fedele, Fischer, Kerbein, McGinnis, Napoli, Nuttall, and Stanley have moved (Dkt. #19) to dismiss most of plaintiff's claims. Specifically, defendants move to dismiss all of plaintiff's claims against them in their official capacities, on the ground of Eleventh Amendment immunity. All these defendants also move to dismiss plaintiff's equal

protection, failure-to-protect and due process claims in their entirety. Defendants Eagen, Fischer, Kerbein, McGinnis, Napoli, and Nuttall also move to dismiss all of plaintiff's claims against them on the ground of lack of personal involvement.[2]

**A. Official-Capacity Claims**

With respect to the official-capacity claims, defendants' motion is granted in part. In his form complaint, plaintiff indicated that all defendants were being sued in both their individual and official capacities. The law is well established, however, that claims for damages against state employees in their official capacities are deemed to be claims against the state itself, and are barred by the Eleventh Amendment to the United States Constitution. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990); *Colon v. Zydell*, 635 F.Supp.2d 264, 267 (W.D.N.Y. 2009). To the extent that plaintiff seeks damages, then, plaintiff's claims against defendants in their official capacities are dismissed.

Plaintiff also seeks equitable relief, however, specifically the return of his crown. Claims for prospective injunctive relief against state employees in their official capacities are not barred by the Eleventh Amendment, *see Frew v. Hawkins*, 540 U.S. 431, 438 (2004), although whether a plaintiff is entitled to such relief depends, of course, on whether he can make out a viable constitutional claim.

---

[2]As the Court reads defendants' motion, then, defendants Bartlett, Chappius, Fedele and Stanley have not moved to dismiss plaintiff's "religion" claims under the First Amendment and RLUIPA.

At this point, it is not clear which of these defendants, if any, might be empowered to give plaintiff the equitable relief that he seeks. To the extent that plaintiff seeks prospective equitable relief, then, defendants' motion to dismiss plaintiff's claims against them in their official capacities is denied without prejudice. *See Washington v. Randall-Owens*, No. 06-12588, 2007 WL 1153042, at *3 (E.D.Mich. Apr. 18, 2007) (allowing prisoner to proceed against defendants in their official capacities where it was not "apparent exactly which Defendants have the necessary official capacity to provide the relief plaintiff requests"). If it is determined at some point that plaintiff is not entitled to any equitable relief, or that a particular defendant or defendants are not in a position to give plaintiff any equitable relief, then some or all of the official-capacity claims may be subject to dismissal.

**B. "Failure to Protect" Claims**

Plaintiff's complaint indicates that one of the bases for his second through tenth claims is defendants' alleged "failure to protect" him. In the context of the factual allegations of this case, such claims must be dismissed.

The term "failure to protect," in prisoner civil rights cases, generally refers to a failure to protect the inmate from physical injury. *See, e.g.*, *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates in their custody"). The complaint in the case at bar, however, does not allege that plaintiff was physically harmed in any way, or even put at risk of physical harm.

Instead, plaintiff appears to be using the term "failure to protect" to mean a failure to intervene, or to prevent or remedy the alleged violations of his constitutional rights. Such an assertion raises other concerns regarding the individual defendants' personal involvement in the alleged violations, which are addressed elsewhere in this Decision and Order. To the extent that the complaint can be read as asserting an Eighth Amendment "failure to protect" claim, however, such claims are dismissed.

**C. Equal Protection Claims**

In his first, second, fourth, eighth, ninth, and tenth claims, plaintiff asserts that his right to equal protection was violated. To state a viable equal protection claim, a plaintiff generally must allege either "purposeful discrimination ... directed at an identifiable or suspect class," *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995), or that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003).

Membership in a particular religious faith will generally satisfy the protected-class requirement. *See Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005). There are no facts alleged here, however, that support a claim that plaintiff was treated differently on account of his religion; nothing in the complaint suggests that any similarly situated inmates of a different faith were treated more favorably than plaintiff, or that plaintiff was singled out for discriminatory treatment on account of his religion. *See Parks v. Smith*, No. 9:08-CV-0586, 2009 WL 3055279, at *8 (N.D.N.Y.

Aug. 17, 2009) (dismissing prisoner's claim that his right to free exercise of religion was violated where "Plaintiff's complaint does not include any facts plausibly suggesting that similarly situated prisoners were treated differently than he was. Rather, Plaintiff merely makes the conclusory allegation that 'other religious groups' were allowed free exercise"), *Report and Recommendation Adopted in Part, Rejected on other Grounds in Part*, 2009 WL 3055278 (N.D.N.Y. Sept. 23, 2009).[3]

It does appear, from Directive 4202, that Rastafarian inmates are permitted to wear crowns, while Jewish prisoners are permitted to wear yarmulkes (which plaintiff claims is impractical for him because of his dreadlocks). To the extent that plaintiff's complaint can be read to assert an equal protection claim on the fact that Rastafarian, but not Jewish, inmates are permitted to wear crowns, however, this claim is still subject to dismissal, because it is both derivative and duplicative of plaintiff's claim that defendants violated his First Amendment right to freely exercise his religion. Plaintiff has no freestanding right to wear a crown, separate from any First Amendment right that he may have in that regard. If plaintiff has a right to wear his crown, then that right exists by virtue of his right to practice his religion. If he does not have such a right (because, for example, his religious beliefs do not in fact require plaintiff to wear a crown, or because his purported religious beliefs are not sincerely held), then the fact that other inmates (such as Rastafarians) have been allowed to wear crowns for religious reasons does not give rise to an equal protection claim, since plaintiff and those other inmates would not be similarly situated. This claim is therefore subject to

---

[3] Although some of the exhibits attached to the complaint indicate that plaintiff claimed in his complaints to various DOCS officials that he was being treated differently on account of his race, *see, e.g.*, Dkt. #1 at 46 (January 22, 2007 letter from plaintiff to Chaplain Stanley stating, "I am being target [sic] for being a African Jewish inmate"), the complaint and plaintiff's motion papers do not indicate that he is alleging that he was discriminated against on account of his race, or that similarly situated white inmates were treated differently from plaintiff.

dismissal as duplicative of plaintiff's free-exercise claim. *See Borzych v. Frank*, No. 06-C-475, 2006 WL 3254497, at *8 (W.D.Wis. Nov. 9, 2006) ("Plaintiff's equal protection claim is simply a repackaging of his free exercise and establishment claims. Accordingly, I will dismiss this claim as duplicative") (citing *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1295-96 (7th Cir. 1996)).[4]

**D. Due Process Claims**

Plaintiff indicated in the complaint that all but the fourth and six of his ten claims are based in part on an alleged violation of his due process rights. Apparently this is based on Fedele's confiscation of plaintiff's crown.

From the factual allegations of the complaint, it appears that plaintiff alleges that Fedele's act was contrary to Directive 4202. *See* Dkt. #1 at 11. Specifically, plaintiff points to the provision in that directive that "[a] facility Chaplain is to determine whether the inmate's practice and the headcovering itself are legitimate. If a Chaplain of the inmate's faith belief is unavailable, the Ministerial Program Coordinator responsible for the particular faith group is to make the determination. If needed, outside religious authorities will be consulted." The directive also states that "[i]f there is reason to believe that an inmate is wearing a religious headcovering inappropriately, a facility Chaplain shall be asked to further investigate. The inmate shall be

---

[4]If plaintiff can establish that his sincere religious beliefs require him to wear a crown, evidence that inmates who follow other faiths are permitted to wear crowns may nonetheless be relevant insofar as it relates to the legitimacy of DOCS's proffered rationale for restricting inmates' wearing of crowns for security or other reasons.

permitted to wear the head covering until the investigation is completed." *See* DOCS Directive 4202 (available at http://www.docs.state.ny.us/Directives/4202.pdf), §§ M(2), M(3).

The law is well settled, however, that "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986)), *cert. denied*, 541 U.S. 988 (2004); *see also Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (only post-deprivation remedy was required following intentional destruction of an inmate's personal property by a prison guard, because the state was not "in a position to provide for predeprivation process").

The Second Circuit has held that New York provides an adequate post-deprivation remedy in the Court of Claims with respect to property claims by prison inmates. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 1983); *see also Jones v. Harris*, 665 F.Supp.2d 384, 401 (S.D.N.Y. 2009) (taking judicial notice of the fact that DOCS has a procedure for a prisoner to follow if he believes he has been wrongfully deprived of property, and stating that "[i]n the ordinary course, these procedures afford a prisoner all the process he is due").

Arguably, the confiscation of plaintiff's crown was not unauthorized, since DOCS has always maintained that the seizure was proper. In a letter to plaintiff dated February 13, 2007, defendant Nuttall noted that plaintiff's "religion [wa]s listed as Jewish," and stated that "[t]he religious head covering for the Jewish faith is a yarmulke, according to our religious advisors, the New York State

Board of Rabbis." Dkt. #1 at 29. Nuttall added that only Rastafarian inmates were permitted to wear their hair in dreadlocks. *Id.*[5]

The alleged due process violation here, though, is not simply the confiscation of plaintiff's crown, but the failure to allow plaintiff to continue wearing his crown until after a chaplain or outside religious authority had been consulted. Assuming the truth of plaintiff's allegations of what occurred here, that was a random, unauthorized act, since it was in apparent contravention of Directive 4202. Accordingly, there is no basis here for a due process claim based on the confiscation of plaintiff's crown. *See Davis v. New York*, 311 Fed.Appx. 397, 400 (2d Cir. 2009) (existence of adequate post-deprivation state remedy, in the form of a Court of Claims action, precluded inmate's § 1983 claim against DOCS employees based on alleged destruction of prisoner's personal property); *Keesh v. Goord*, No. 04-CV-271, 2007 WL 2903682, at *12 n. 9 (W.D.N.Y. Oct. 1, 2007) (dismissing prisoner's due process claim for loss of property based on seizure of religious training

---

[5]Nuttall stated that he was responding to a letter that plaintiff had written to Commissioner Fischer, in which, according to Nuttall, plaintiff stated that he had been wearing a "kufi," which is described in § M(1)(a) of Directive 4202 as "a hemispheric head cap" that "fit[s] close to the head (hair)." If appears that the characterization of plaintiff's head covering as a kufi may have been made by staff members at Southport, not by plaintiff, who has consistently referred to his head covering as a crown. *See* Dkt. #1 at 30.

That is immaterial to the Court's decision, however. Crowns, which are referred to in § M(1)(c) of Directive 4202 at "Tsalot-Kobs," are permitted only for Rastafarian inmates. *See Excell v. Burge*, No. 05-CV-1231, 2008 WL 4426647, at *7 n.6 (N.D.N.Y. Sept. 25, 2008) ("A 'crown' is another name for the Tsalot-Kob"); *see also Benjamin v. Coughlin*, 905 F.2d 571, 578-79 (2d Cir. 1990) (upholding DOCS regulation giving Rastafarian inmates limited permission to wear crowns, as opposed to Jewish and Muslim inmates' broader permission to wear yarmulkes and kufis, respectively). Regardless of whether plaintiff's headwear was considered a crown or a kufi, it is clear that Nuttall took the position that plaintiff was not entitled to wear it.

manual and other items, on ground that New York Court of Claims Act provided adequate post-deprivation remedy).[6]

**E. Personal Involvement**

Defendants Kerbein, Nuttall, Fischer, McGinnis, Napoli and Eagen also move to dismiss the claims against them on the ground that plaintiff has failed to allege their personal involvement in the alleged constitutional violations.

A plaintiff asserting a § 1983 claim must allege, and ultimately prove, that the defendant was personally involved in the violation of his constitutional rights. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). That requirement may be satisfied by showing that: (1) the defendant directly participated in the alleged violation; (2) the defendant, after being informed of the violation through a report or appeal, was in a position to remedy the wrong, and failed to do so; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or

---

[6]Plaintiff's allegations about not being allowed to keep his crown pending consultation with a rabbi survive as an aspect of plaintiff's claim under the Free Exercise Clause of the First Amendment and RLUIPA. As stated, defendants have not moved as to that claim.

The ultimate issue on that claim, however, is whether the defendants properly refused to allow plaintiff to wear his crown, not whether they should have temporarily allowed him to continue wearing it pending consultation with a chaplain. If plaintiff prevails on his free-exercise claim, then he may be entitled to damages for the period during which he was deprived of his crown, in violation of his First Amendment rights. If defendants prevail on plaintiff's free-exercise claim, it will be immaterial to that claim whether they violated Directive 4202 in that regard, since plaintiff would have had no First Amendment right to wear the crown in the first place. *See Barnes v. Henderson*, 628 F.Supp.2d 407, 411 (W.D.N.Y. 2009) (violation of New York regulations does not establish § 1983 claim).

custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberated indifference to others' rights by failing to act on information indicating that constitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Rivera v. Fischer*, 655 F.Supp.2d 235, 237-38 (W.D.N.Y. 2009).

**1. Kerbein**

Plaintiff's conclusory allegation that Kerbein "covered up" for Fedele by conducting a less than thorough investigation fails to state a claim against Kerbein. "[A]n inmate 'has no constitutional right to have his grievances processed or investigated in any particular manner.'" *Green v. Herbert*, 677 F.Supp.2d 633, 639 (W.D.N.Y. 2010) (quoting *Shell v. Brzezniak*, 365 F.Supp.2d 362, 379 (W.D.N.Y. 2005)). Plaintiff's claims against Kerbein must therefore be dismissed. *See Rosales v. Kikendall*, 677 F.Supp. 643, 650 (W.D.N.Y. 2010) ("Plaintiff's conclusory allegation that Kikendall 'knew that [plaintiff's] complaint was not investigated according to DOCS guidelines but ... sustained the investigation to cover up the defendants actions' is insufficient to show any knowing violation by Kikendall of plaintiff's rights") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**2. Nuttall and Fischer**

Plaintiff's allegations concerning Nuttall and Fischer are that plaintiff wrote a letter to Fischer, complaining about the confiscation of his crown, and that Nuttall responded on Fischer's behalf in a letter "supporting the violations of his subordinates." Dkt. #1 at 16.

These allegations do not state a claim against Fischer. *See Garvin v. Goord*, 212 F.Supp.2d 123, 126 (W.D.N.Y. 2002) ("where a [supervisory official]'s involvement in a prisoner's complaint is limited to forwarding of prisoner correspondence to appropriate staff, the [official] has insufficient personal involvement to sustain a § 1983 cause of action").

As to Nuttall, I conclude that at this point, plaintiff's claims are sufficient to withstand defendants' motion for judgment on the pleadings. "While mere receipt of a letter from a prisoner is insufficient to establish individual liability ... [p]ersonal involvement will be found ... where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Boddie v. Morgenthau*, 342 F.Supp.2d 193, 203 (S.D.N.Y. 2004).

That is not to say, or even suggest, that plaintiff is likely to establish his claim against Nuttall. It appears possible, if not probable, that Nuttall might be entitled to qualified immunity, based on his reliance on Directive 4202 and the advice of the New York State Board of Rabbis. *See*, *e.g.*, *Cossey v. David*, No. 9:04-CV-1501, 2007 WL 3171819, at *9 (N.D.N.Y. Oct. 29, 2007); *but see Ford v. McGinnis*, 352 F.3d 582, 597-98 (2d Cir. 2003) (reversing district court's grant of summary judgment for prison authorities on qualified immunity grounds, which was based on district court's finding that it was objectively reasonable for defendants to rely on advice of DOCS religious authorities in concluding that certain feast was without religious significance, and stating that "the proper inquiry was always whether Ford's belief was sincerely held and '*in his own scheme of things*, religious'") (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)) (alteration in original; additional internal quote omitted). Nuttall has not moved on that ground, however, and at this

pleading stage the record is not so clear-cut that the Court could dismiss plaintiff's claims against Nuttall on that ground *sua sponte*.

### 3. McGinnis

In his eighth claim, plaintiff alleges that defendant McGinnis "denied Plaintiff to get Kosher diet," and that he "supported C.O. Fedele, by creating [his] own policy ... ." Dkt. #1 at 17. The complaint, however, is virtually devoid of any factual allegations to support those conclusions. Accordingly, plaintiff's claims against McGinnis must be dismissed. *See Allen v. Wende*, 671 F.Supp.2d 464, 466 (W.D.N.Y. 2009) (prisoner's § 1983 "claim cannot stand absent some factual allegations to support it") (citing *Twombly*, 550 U.S. at 555).

### 4. Napoli

Plaintiff's allegations concerning defendant Napoli are similar to those concerning Fischer: that he wrote to Napoli, and that Napoli failed to correct the alleged violations of plaintiff's rights. *See* Dkt. #1 at 18. The exhibits attached to the complaint indicate that those letters were answered by subordinates of Napoli, to whom they had been referred for investigation and response. *See* Dkt. #1 at 40, 50, 53, 59, 76. For the reasons stated with respect to Fischer, those allegations are insufficient to show Napoli's personal involvement for purposes of § 1983, and plaintiff's claims against Napoli are therefore dismissed as well.

**5. Eagen**

In his tenth claim, plaintiff alleges that defendant Eagen "did not ruled [sic] on Plaintiff [sic] Grievance after it was sent to C.O.R.C. [the Central Office Review Committee] on February 12, 2007." Dkt. #1 at 18. Plaintiff does not articulate how that violated his constitutional rights, and even construing the complaint as generously to plaintiff as is reasonably possible, I fail to see how that allegation gives rise to a § 1983 claim against Eagen. Plaintiff's claim against Eagen is therefore dismissed.

**II. Motion to Dismiss by Defendant Corcoran**

Defendant Corcoran has separately moved (Dkt. #33) to dismiss the claims against him, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's allegations against Corcoran are the same as his allegations against McGinnis, *i.e.*, that he "denied Plaintiff to get Kosher diet," and that he "supported C.O. Fedele, by creating [his] own policy ... ." Dkt. #1 at 17. The attachments to the complaint also show that on February 12, 2007, Corcoran sent a memo to plaintiff responding to a letter that plaintiff had written to Napoli, complaining that Napoli's "subornates [sic] denied [plaintiff his right to practice his religion] by illegally confiscating [his] religion headwear." Dkt. #1 at 52. In his memo, Corcoran stated, "You were provided with a Yarmulke by Rabbi Matasar and per Directive #4202 as you are Jewish that is the property [sic] headwear. This matter is closed." Dkt. #1 at 53.

None of those allegations give rise to any cognizable constitutional claim against Corcoran. Plaintiff's claims against Corcoran are therefore dismissed.

**III. Motion to Dismiss by Defendant Matasar**

Defendant Rabbi Howard Matasar has also filed a motion to dismiss (Dkt. #41). Plaintiff's allegations concerning Matasar are that plaintiff "explain[ed] to him Directive 4202 and the Religion Rules," and that plaintiff sent Matasar a memo from another rabbi "stating Jewish [inmates] with dreads are allow [sic] to wear religion head covering, yet Rabbi Howard did nothing to protect Barnes religious rights. Also, Rabbi Howard was to rule on the headwear." Dkt. #1 at 17.

Plaintiff has attached to the complaint a letter that he wrote to Matasar dated February 6, 2007 (Dkt. #1 at 48). In that letter, plaintiff stated, "Today when you came to give me the yarmulke I explained to you as I did previous, that I will need safety pens [sic], etc. to keep the yarmulk [sic] on my head." Plaintiff also indicated that Matasar "ke[pt] telling [plaintiff that Matasar could]n't do nothing," and he added, "You and the employee's know this yarmulke won't fit and yall tell me to cut my hair!" Plaintiff further stated, "I wrote [to you] and you never response [sic]."

Aside from the utterly conclusory, and insufficient, allegation that Matasar "did nothing to protect" plaintiff's rights, these allegations also fail to articulate any plausible basis upon which it could be inferred that Matasar violated plaintiff's constitutional rights. At most, they indicate that Rabbi Matasar failed to respond to one of plaintiff's letters, and that to the extent that Matasar did discuss plaintiff's concerns with him, plaintiff was unhappy with what Matasar had to say. None of those allegations state a facially valid claim against Matasar. Matasar's motion to dismiss is therefore granted.

**IV. Motion to Dismiss by Defendant Murphy**

Defendant Murphy has likewise moved for dismissal under Rule 12(b)(6). Dkt. #56. Plaintiff alleges that Murphy "forge[d] a false cell search indicating [that plaintiff's] cell was searched and [that his] religion headwear was confiscated at that time." Dkt. #1 at 12. Plaintiff alleges that no such search occurred, and that Murphy "did this to protect C.O. Fedele ... ." In support of that claim, plaintiff has submitted a contraband receipt signed by Murphy and dated January 23, 2007, stating that a kufi had been confiscated from plaintiff's cell on that date and given to a chaplain.[7] Dkt. #1 at 36.

Plaintiff has also submitted a response that he received to a New York Freedom of Information Law request, stating, "[T]here is no record in the log regarding you for 1/23/07 ... ." Dkt. #1 at 38. Plaintiff contends that the absence of such a record supports his allegation that no search of his cell occurred on that date. The asserted constitutional bases for this claim are "failure to protect, due process and religion, equal to [sic] protection." Dkt. #1 at 12.

In his motion to dismiss, Murphy states that he seeks dismissal of plaintiff's official-capacity claims on the ground of Eleventh Amendment immunity, and he also moves to dismiss the equal protection, failure to protect and due process claims. *See* Dkt. #82 ¶¶ 12-14.

Plaintiff's claims against Murphy in his official capacity are dismissed in their entirety. As explained previously, such claims are barred to the extent that plaintiff seeks money damages against Murphy. In addition, there is no indication that Murphy, a correction officer whose involvement in

---

[7]Sgt. Furman is also named in this claim. Under the "Comments" section of the contraband receipt signed by Murphy are the words "per Sgt. Furman." Dkt. #1 at 36. Furman has apparently never been served in this action, however, nor has he appeared.

the underlying events appears to have been limited and transitory, is or would be in a position to afford plaintiff any equitable relief.

Plaintiff's failure-to-protect, equal protection, and due process claims against Murphy are dismissed for the reasons stated above with respect to the other defendants.

## CONCLUSION

The motion to dismiss filed by defendants Bartlett, Chappius, Eagen, Fedele, Fisher, Kerbein, McGinnis, Napoli, Nuttail, and Stanley (Dkt. #19) is granted in part and denied in part. Plaintiff's claims against those defendants in their official capacities are dismissed, to the extent that plaintiff seeks to recover damages from those defendants. To the extent that the complaint can be read as asserting an Eighth Amendment "failure to protect" claim against those defendants, such claims are also dismissed. Plaintiff's equal protection and due process claims against those defendants are dismissed in their entirety. All of plaintiff's claims against defendants Kerbein, Fischer, McGinnis, Napoli, Eagen, Corcoran, and Matasar are dismissed. In all other respects, the motion is denied.

The motion to dismiss filed by defendant Corcoran (Dkt. #33) is granted, and plaintiff's claims against Corcoran are dismissed.

The motion to dismiss filed by defendant Matasar (Dkt. #39) is granted, and plaintiff's claims against Matasar are dismissed.

The motion to dismiss filed by defendant Murphy (Dkt. #56) is granted, and plaintiff's failure-to-protect, equal protection, and due process claims against Murphy, and all his claims against Murphy in Murphy's official capacity, are dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       January 13, 2011.